UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EROLD BLANC,
Individually and on behalf of
others similarly situated,

        Plaintiff,                    **CLASS REPRESENTATION**

v.                                          Case No.

DOUGLASS JEEP, INC.

        Defendants.
_____/

**CLASS ACTION COMPLAINT**
**FOR DAMAGES AND DECLARATORY RELIEF**

Plaintiff, EROLD BLANC ("BLANC"), individually and on behalf of others similarly situated, sues DOUGLAS JEEP, INC. ("Dealership" or "Defendant"), and alleges:

**JURISDICTION**

1. The jurisdiction of this Court is invoked pursuant to the Truth in Lending Act, 15 U.S.C. §1640(e) ("TILA"), and 28 U.S.C. §§1331 and 1337.

**PARTIES**

2. The Dealership is a Florida corporation doing business under the laws of the State of Florida with its principal place of business located in Sarasota County, Florida.

3. At all times material to this action, the Dealership operated a franchised motor vehicle dealership in Sarasota County, Florida, located at 2382 S. Tamiami Trail, Venice, FL 34293.

4. The Dealership is a licensed motor vehicle dealer in the State of Florida pursuant to Florida Statutes, section 320.27(c).

5. The Dealership is also a licensed motor vehicle retail installment seller in Florida as defined by Florida Statutes, section 520.02(14).

6. Blanc is a resident of Tampa, Hillsborough County, Florida.

7. All conditions precedent to the institution of this action have been performed, or have been waived by the Defendants.

## GENERAL ALLEGATION

8. The Dealership, through a pattern and practice of doing business, routinely fails to provide accurate disclosures of the "amount financed, "finance charge," "total of payments" and "total sale price" in its standard retail installment sales contract due to its practice of inflating the cost of Guaranteed Asset Protection ("GAP") coverage.

9. Specifically, the Dealership routinely promotes and sells third party GAP coverage in connection with its sale of motor vehicles.

10. Upon information and belief, the Dealership receives a commission of any GAP coverage that it sells, such that the more consumers to which GAP coverage is sold, and the higher the premium of such GAP coverage, the more commission the Dealership receives.

11. The GAP coverage premium for any given vehicle is based, in part, on the "amount financed" for that vehicle.

12. Recognizing this, the Dealership has developed a practice by which it provides third party GAP providers with an inflated "amount financed" in order to increase the cost of GAP coverage, thereby increasing the commission that the Dealership receives in connection with the sale.

13. The effect of such practice is not only to artificially inflate the cost of GAP coverage, but because the cost of GAP coverage is built into the "amount financed" itself, it also

renders the "amount financed, "finance charge," "total of payments" and "total sale price" inaccurate.

14.     Under such circumstances, the GAP Contract price charged to the consumer is fictitious and based upon an inflated finance charge, which results in an increased premium to the customer, and a higher commission to the Dealership.

15.     By inflating the cost of the amount financed on a GAP Contract, the financed amount disclosed by the Dealership on the RISC is inaccurate, in violation of the Florida Motor Vehicle Retail Sales Finance Act, Fla. Stat. §520.01 *et seq.*, and the Truth in Lending Act, 15 U.S.C.A. §1601, *et seq* and 12 C.F.R. §226.1, *et seq.*, and the consumer ultimately pays more for the financing of the vehicle over the life of the loan.

16.     TILA is designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  15 U.S.C.A. §1601(a).

17.     Regulation Z, 12 C.F.R. §226.1 establishes obligations on the part of businesses that extend credit to consumers, including the Dealership.  These obligations include a requirement to accurately disclose all charges that form the basis of the financing amount, clearly and conspicuously in writing.  12 C.F.R. §226.17.

18.     Likewise, the Florida Motor Vehicle Retail Sales Finance Act, Fla. Stat. §520.01, *et seq.* ("MVRSFA") requires the written disclosure of credit terms and is closely analogous to TILA.

19.     Finally, the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* ("FDUTPA"), is designed to "protect the consuming public and legitimate business

enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202.

20. The Dealership's practice violates TILA, MVRSFA and FDUTPA because it fails to accurately disclose the "amount financed," "finance charge" and "total of payments" to Plaintiff and members of the proposed class, and instead provides artificially inflated figures for these required disclosures that are fabricated in order to increase the GAP Contract price on the vehicles, and in turn the Dealership's commission from the sale of GAP coverage.

## ALLEGATIONS PERTAINING TO BLANC

21. On or about September 23, 2021, BLANC purchased a 2015 Mazda 6 bearing Vehicle Identification #JM1GJ1W53E1100566 (the "Blanc Vehicle") from Defendant.

22. In association with the purchase of the Blanc Vehicle, the Dealership prepared a Retail Installment Sale Contract, which was signed by BLANC and the Dealership (the "Blanc RISC"). A true and exact copy of the Blanc RISC is attached hereto as **Exhibit "A"**.

23. Also in association with the purchase of the Blanc Vehicle, the Dealership solicited BLANC to purchase optional GAP coverage on the Blanc Vehicle, which BLANC agreed to purchase from the Dealership.

24. The Blanc RISC disclosed that the amount financed on the Blanc Vehicle is $17,786.53. This included an $800.00 charge for "Optional Gap Contract."

25. The Dealership prepared a GAP Addendum, which was signed by BLANC and the Dealership (the "Blanc GAP Contract"). A true and exact copy of the Blanc GAP Contract is attached hereto as **Exhibit "B"**.

26. The Blanc GAP Contract states that the amount financed on the Blanc Vehicle is $18,045.22, which exceeds the amount financed as disclosed on the Blanc Financing Agreement.

27. The Blanc GAP Contract provides that the "GAP Addendum Cost", or premium, was $800.00.

28. The cost of the Blanc GAP Contract was calculated based on the inflated purported amount financed of $18,045.22.

29. Had the amount financed been disclosed as $17,786.53 or less, the amount of the premium for the Blanc GAP Contract would have been less than $800.00.

30. By inflating the cost of the amount financed on the Blanc GAP Contract, BLANC paid more for GAP insurance, and in turn the Blanc RISC contained an increased and inaccurate amount financed, finance charge, and total of payments, while the Dealership makes an increased profit from the sale of the vehicle.

## CLASS ALLEGATIONS

31. Plaintiff BLANC brings this action individually and on behalf of a class of individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.

32. The aforementioned class of individuals is defined as all persons, collectively referred to as the "Class" or "Class Members," who:

   a. At any time within four (4) years prior to the date this Complaint was filed, purchased a vehicle from Dealership;

   b. Entered into a Retail Installment Sale Contract for the vehicle;

   c. Were charged for an optional Gap Contract by Dealership; and

   d. Were charged an amount for the Optional Gap Contract by Dealership based on an inaccurate "amount financed" listed on the Gap Contract, which exceeded the finance charge stated on the financing agreement.

33. The class is so numerous that joinder of all members is impractical. The exact number of class members is unknown to Plaintiff at this time by can be easily ascertained through appropriate discovery and a ministerial review of the Dealership's business records.

34. The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by the Dealership.

35. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal question at issue is whether the Dealership violated the FMVSA, TILA and FDUTPA by inflating the "amount financed" for customers' vehicles in GAP contracts so as to increase the GAP premium and thereby inflate the "amount financed," "finance charge," and "total of payments" in the consumers' RISCs.

36. Plaintiff's claim is typical of the claims for the Class, which arise from the same operative facts and are predicated on the same legal theories.

37. There are no individual questions of fact, other than whether a Class Member was charged an inflated GAP premium due to an inaccurate "amount financed" in the GAP contract, which can be determined by a ministerial inspection of the Dealership's records.

38. Plaintiff will fairly and adequately protect the interests of the class and has no interest adverse to or which directly and irrevocably conflicts with the interests of other members of the class.

39. Plaintiff is willing and prepared to serve this Court and the proposed Class.

40. The interests of Plaintiff are co-extensive with and not antagonistic to those of the absent Class Members.

41. Plaintiff has retained the services of counsel who are experienced in consumer protection claims, as well as class action litigation, and will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiff and all absent Class Members.

42. Class certification is appropriate under Fed.R.Civ.P. 23(b)(1)(A) and 23(b)(1)(B). The prosecution of separate actions by individual Class Members would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to the action or couls substantially impair or impede their ability to protect their interests.

43. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards of conduct and varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow the existence of inconsistent and incompatible rights within the Class.

44. Class certification is appropriate under Fed.R.Civ.P. 23(b)(2) in that Defendant has acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

45. Class certification is appropriate under Fed.R.Civ.P. 23(b)(3) in that the questions of law and fact that are common to members of the class predominate over any questions affecting only individual members.

46. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in Plaintiff's Complaint in that:

   a. Individual claims by the Class Members will impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake;

b. As a result, very little litigation has been commenced over the controversies alleged in Plaintiff's Complaint and individual members are unlikely to have interest in prosecuting and controlling separate individual actions; and

c. The concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

## COUNT I
## VIOLATIONS OF THE TRUTH IN LENDING ACT

47. Plaintiff adopts and reallege paragraphs 1 through 46 as if fully set forth herein.

48. This is a proposed class action pursuant to TILA and Regulation Z to recover for the Dealership's violations of the disclosure requirements contained in TILA and Regulation Z.

49. The Dealership is a credit provider and as such is subject to the disclosure requirements set forth in TILA.

50. Congress intended TILA "to protect consumers from inaccurate and unfair credit billing and credit card practices." 15 USC § 1601(a). The Act is to be construed liberally in favor of consumers and strictly against creditors.

51. Plaintiff and Class Members each financed the purchase of motor vehicles from the Dealership in the State of Florida pursuant to retail installment sales contracts which included a charge for optional GAP Coverage that was at an inflated cost.

52. The retail installment sales contracts which comprise the contract documents on which the class action is based, do not contain accurate costs for the optional GAP coverage because such costs were calculated using an inflated "amount financed" that resulted in an increased cost for GAP coverage, which increased cost was then built into the "amount financed, "finance charge," "total of payments" and "total sale price."

53. The TILA disclosure statement issued by Defendant to Plaintiff and Class Members violated the requirements of TILA and Regulation Z by inaccurately providing an "amount

financed, "finance charge," "total of payments" and "total sale price" that was calculated using an artificially inflated cost for GAP coverage.

54. The Dealership violated TILA and Regulation Z by failing to clearly and conspicuously disclose the Total Sale Price by failing to disclose accurately the "amount financed, "finance charge," "total of payments" and "total sale price," which was based on a fictitious and inflated GAP Contract amount.

55. Because of the Dealership's TILA violations, Plaintiff and Class Members suffered damages including but not limited to increased finance charges over the life of the loan.

56. Plaintiff has retained the undersigned attorney to represent their interests and interests of the putative Class Members and is obligated to pay said attorney a reasonable fee for services rendered. Plaintiff and TILA Class Members are entitled to attorney's fees pursuant to 15 U.S.C. §1640(a)(3) and Florida Statutes, §768.734(2).

WHEREFORE, Plaintiff and the Class seek a judgment for actual damages, statutory damages, prejudgment and post-judgment interest, attorney's fees, and costs.

## COUNT II
## VIOLATIONS OF THE FLORIDA MOTOR VEHICLE SALES FINANCE ACT

57. Plaintiff adopts and reallege paragraphs 1 through 46 and 48 through 56 as if fully set forth herein.

58. This is an action brought pursuant to MVRSFA.

59. Section 520.12(2) provides a civil remedy to a buyer where the dealer willfully violates Chapter 520, Part I with respect a retail installment sale. The buyer may recover "an amount equal to any finance charge and any fees charged to the buyer by reason of delinquency, plus attorneys' fees and costs incurred by the buyer to assert rights under this part."

60. At all times material, the Dealership, in the ordinary course of its bueinsess, was engaged in the business of a motor vehicle retail installment seller and licensed in accordance with Section 520.03.

61. The Dealership engaged in a common scheme to mislead Plaintiff and Class Members, which included misleading or inadequate disclosures in its standard RISC in violation of the MVRSFA, by failing to clearly, conspicuously and accurately disclose the "amount financed, "finance charge," "total of payments" and "total sale price", and instead providing inflated amounts that were based on a fictitious and inflated GAP Contract amount.

62. The Dealership violated Florida Statute §520.12 by:

   a. failing to clearly and conspicuously make accurate disclosures in writing of the "amount financed," "finance charge," "total of payments" and "total sale price," in a form that the consumer may keep, prior to consummation of the credit transaction pursuant to Florida statute section 520.07(2)(a)-(e), as a result of including an inflated cost of the GAP Contract without providing the necessary TILA and Regulation Z disclosures; and/or

   b. failing to identify and itemize the cost of the GAP contract in accordance with Fla. Stat. section 520.07(3)(d)

63. The Dealership's violations of the MVRSFA as described herein were willful, as the Dealership was at all times aware of its noncompliance with the MVRSFA, but nevertheless chose to implement business practices that run afoul of its obligations under Florida law.

64. As a direct and proximate result of the foregoing willful violations of the Florida Motor Vehicle Retail Sales Finance Act by the Defendants, the Plaintiff and Class Members have suffered damages, including, but not limited to, finance charges, costs, and attorney's fees.

65. Pursuant to Florida Statute §520.12, Plaintiff and Class Members are entitled, as statutory damages, to recover actual damages plus an amount equal to any finance charge and any fees charged to the Plaintiff by reason of delinquency, plus attorney's fees and costs.

WHEREFORE, Plaintiff and the Class seek a judgment for actual damages, statutory damages, prejudgment and post-judgment interest, attorney's fees, and costs.

## COUNT III
### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### DAMAGES

66. Plaintiff adopts and reallege paragraphs 1 through 46, 48 through 56, and 58 through 65 as if fully set forth herein.

67. This is an action brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Florida Statute §501.01, *et seq.*

68. Plaintiff and the Class Members are each a "consumer" as that term is defined under the Florida Deceptive and Unfair Trade Practices Act.

69. The Dealership is a person engaged in the conduct of trade and/or commerce governed by the Florida Deceptive and Unfair Trade Practices Act.

70. The Dealership has intentionally and systematically preyed on consumers by implementing a practice and policy of illegally overstating the finance charge on vehicles sold to customers that purchased optional GAP coverage.

71. Though this practice results in the Dealership receiving only a small amount of money from Plaintiff and individual Class members, in the aggregate the Dealership has unlawfully collected potentially tens or hundreds of thousands of dollars from Florida consumers.

72. Pursuant to Section 501.203(3)(c), Florida Statutes, violations of Chapter 501 and 520, Florida Statutes, and of TILA, constitute *per se* violations of the Florida Deceptive and Unfair Trade Practices Act.

73. The Dealership violated TILA by inflating the financing charge on the Plaintiff's and Class Members' RISCs, resulting in an inflated "amount financed," "finance charge," "total of payments" and "total sale price." 15 U.S.C.A. §1601(a) and 12 C.F.R. §226.17.

74. The Dealership violated Florida Statute §520.07 when they inflated the financing charge on the Plaintiffs' and Class Members' RISC's, resulting in an inflated "amount financed," "finance charge," "total of payments" and "total sale price."

75. The Dealership's conduct, individually and collectively, violated Chapter 501, Florida Statutes, including but not limited to the following conduct:

   a. Committing violations of Chapter 520, Florida Statutes, and of TILA;

   b. Misrepresenting the financing charge of the vehicles sold to consumers who purchased optional GAP coverage, in order to inflate the premium charged for GAP coverage; and

   c. Disclosing an inaccurate and inflated "amount financed," "finance charge," "total of payments" and "total sale price" to consumers, which were calculated based on an inflated cost for GAP coverage.

76. The Dealership's conduct and violations of Chapter 520, Florida Statutes and/or TILA constitutes unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices under Chapter 501 and specifically under Florida Statute §501.211(2) and Florida law.

77. As a direct and proximate result of the Dealership's practices outlined above, the Plaintiff and Class Members have suffered actual damages in that each Class Member has paid an improper and inflated finance charge for the purchase of their vehicle, as well as costs and attorney fees.

78.    Plaintiff and Class Members did not learn of the Dealership's deception until after the sale had already been completed and the inflated finance charge had already been collected from them.

79.    Florida Statute §501.211(2) and Florida Statute §501.2105, Florida Statute provides for an award of attorney fees in favor of Plaintiff and Class Members should they prevail.

80.    Plaintiff has retained the undersigned attorney to represent his interests and interests of the putative Class Members against the Dealership, and to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff and the Class seek a judgment for damages, prejudgment and post-judgment interest, attorney's fees, and costs.

## COUNT IV
### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### DECLARATORY RELIEF

81.    Plaintiff adopts and reallege paragraphs 1 through 46, 48 through 56, 58 through 65, and 67 through 80 as if fully set forth herein.

82.    Pursuant to Florida Statute §501.211(1), anyone aggrieved by a violation of the Florida Deceptive and Unfair Trade Practices Act are entitled to obtain a declaratory judgment that an act or practice violates the Act.

83.    Plaintiff and Class Members are entitled to a declaratory judgment that the Defendant's act and/or practice of charging customers an inflated charge for GAP Coverage and charging customers an inflated "amount financed," "finance charge," "total of payments" and "total sale price" based on the inflated GAP Coverage charge violates the Florida Deceptive and Unfair Trade Practices Act and Florida Statute §681.117.

84. Florida Statute §501.211 and Florida Statute §501.2105, Florida Statute provides for an award of attorney fees in favor of Plaintiff and Class Members should they prevail.

85. Plaintiff has retained the undersigned attorney to represent their interests and interests of the putative Class Members against the Dealership, and to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff and the Class seek declaratory relief, attorney's fees, and costs.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class demand a trial by jury on all issues so triable.

DICKINSON & GIBBONS, P.A.

By /s/Jesse R. Butler
    JESSE R. BUTLER
    Florida Bar No. 084058
    ANDREW C. WILSON
    Florida Bar No. 0103203
    401 North Cattlemen Road, Suite 300
    Sarasota, Florida 34232
    jbutler@dglawyers.com
    awilson@dglawyers.com
    cmccurdy@dglawyers.com
    (941) 366-4680 (phone)
    (941) 365-2923 (fax)
    Attorneys for Plaintiff